419 F.2d 179
 LOCAL 467, UPHOLSTERERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
HOME FURNITURE CO., Inc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 17793.
 No. 17796.
 United States Court of Appeals Third Circuit.
 Argued October 3, 1969.
 Decided December 15, 1969.
 
 Robert M. Landis, Dechert, Price & Rhoads, Philadelphia, Pa. (R. Neal Risley, Philadephia, Pa., on the brief), for petitioner, Home Furniture Co., Inc.
 Richard S. Hoffmann, Philadelphia, Pa., on the brief, for petitioner, Local 467, Upholsterers' International Union of North America, AFL-CIO.
 Janet C. McCaa, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N.L.R.B., on the brief), for respondent.
 Before STALEY, SEITZ and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The National Labor Relations Board petitions for enforcement of an order[1] requiring Home Furniture Company (Home) to honor its collective bargaining agreement with Local 3, Allied Wood-workers of America, Inc. (Allied) and directing Local 467, Upholsterers' International Union of North America, AFL-CIO (Local 467) to cease and desist from interfering with Home and Allied in the performance of their agreement.
 
 
 2
 In issuing this order the Board treated its determination that Allied was the bargaining agent for an appropriate unit — both when it was afforded recognition and when its collective bargaining agreement was rescinded unilaterally by Home — as determinative of whether the actions of Home and Local 467 violated the National Labor Relations Act. In considering the Board's decision, therefore, we shall focus on the Board's determination that Allied represented an appropriate unit.
 
 
 3
 The case was brought before the Board on the following facts. On September 22, 1967, Home and Bethlehem Furniture Company executed a contract whereby Home agreed to purchase Bethlehem's furniture plant in Red Lion, Pennsylvania and to settle therefor on December 15, 1967. Six days after execution of the contract, Bethlehem and Allied, the bargaining agent for the maintenance and production employees at Red Lion, executed a new two-year collective bargaining agreement. On settlement day, Home's vice president and secretary wrote to Allied advising it that Home adopted the current collective bargaining agreement between Allied and Bethlehem and assured Allied of Home's intention to retain the bargaining unit personnel.
 
 
 4
 Subsequently, Local 467, which was the bargaining agent for Home's employees at its other two furniture plants in the area, learned of these events and demanded recognition as exclusive bargaining agent at Red Lion. On January 25, 1968, Home withdrew recognition from Allied. One month later, Home recognized Local 467 as bargaining agent for the production and maintenance employees at all three of its plants.[2]
 
 
 5
 A hearing was held upon charges filed by Allied and the Trial Examiner found that Home and Local 467 had violated the Act. The Board considered exceptions to the Trial Examiner's Decision and adopted it with modifications. Specifically, the Board found the Red Lion unit was appropriate when Home recognized Allied and adopted the bargaining agreement as to Red Lion and that Home violated section 8(a) (5) & (1) of the Act when it withdrew recognition from Allied in an appropriate unit on January 25, 1968. It found Home also violated section 8(a) (1) & (2) of the Act when it unlawfully assisted Local 467 by recognizing it as bargaining agent for the Red Lion employees at a time when the union did not have majority support in the Red Lion unit. And it found that Home violated section 8(a) (1) & (3) of the Act by maintaining a collective bargaining agreement with Local 467 covering the Red Lion employees which had dues check-off and union-security provisions. The Board found Local 467 violated section 8(b) (1) (A) & 8(b) (2) of the Act by entering into and maintaining the agreement as to the Red Lion employees.
 
 
 6
 The Board issued an order requiring Home and Local 467 to cease and desist from enforcing their bargaining agreement as to Red Lion, to make the Red Lion employees whole for any losses, and requiring Home to honor its prior agreement with Allied. The Board seeks enforcement of its order and petitioners Home and Local 467 seek denial of enforcement.
 
 
 7
 Home and Local 467 argued before the Board and argue here that the Red Lion employees were never an appropriate unit but rather were an accretion to the multiplant unit composed of the employees at Home's other two plants.
 
 
 8
 The General Counsel, on the other hand, contends that the Red Lion employees were an appropriate unit for bargaining when recognition was extended to and withdrawn from Allied. He argues that the Board's findings are supported by substantial evidence and that the relief ordered is appropriate.
 
 
 9
 As we already noted, the central issue before this Court is the propriety of the Board's determination that the Red Lion employees constituted a separate appropriate unit when the collective bargaining agreement with Allied was adopted and rescinded. Unit determinations by the Board are, of course, within its discretionary power. Thus, the Board's order must be enforced unless it is shown the Board abused its discretion.
 
 
 10
 In deciding this crucial issue the Board said:
 
 
 11
 "In all the circumstances of this case, we find no merit in the contention of Home and Upholsterers that the employees of Red Lion were merged into or accreted to the bargaining unit of York employees represented by the Upholsterers. The Red Lion employees constituted a separate appropriate unit while employed by Bethlehem and continued as such when Home became their employer. Upon acquiring the plant, Home retained all the employees, recognized Allied as their bargaining representative, adopted the existing contract covering them, and continued to check off their dues in favor of Allied, as Bethlehem had done. At all times, it is clear, Allied was the bargaining agent for the Red Lion employees." (Emphasis added.)
 
 
 12
 We have carefully examined the texts of the Trial Examiner's and the Board's Decisions for further articulation of the reasoning upon which the Board's resolution of this crucial issue was grounded. The Board's Decision is bare of any further explanation. The Trial Examiner's Decision, which the Board adopted with modifications, never directly confronted the issue. Rather, the Trial Examiner decided the case on a different theory altogether. Although he found there was an accretion, he nevertheless upheld the charges because the recognition of Allied and "the fact that a single-plant unit at Red Lion might have been held appropriate and the employees there might have preferred to be represented by Allied in a Globe type election" created a "very real" question of representation which could only be resolved through the Board's representation procedure. Because he found Home and Local 467 preempted this procedure, he concluded, under the rationale of Midwest Piping & Supply Co., Inc., 63 N.L.R.B. 1060, they violated the Act. The Board did not adopt this theory in its Decision and Order. Thus, the paragraph from the Board's Decision and Order, quoted above is the sole Board explanation of its action.
 
 
 13
 While we are not fully convinced that the Board articulated any reasons[3] for its finding that the Red Lion employees were an appropriate separate unit, it did apparently rely on the following factors:
 
 
 14
 (1) Home retained all the former Bethlehem employees;
 
 
 15
 (2) Home recognized Allied as the bargaining agent for those employees;
 
 
 16
 (3) Home adopted the existing contract between Allied and Bethlehem and continued to perform according to its provision for dues check off to Allied, etc.
 
 
 17
 In our view, these three factors are concerned only with the history of bargaining at Red Lion. We say this because even a brief reference to the other factors the Board traditionally has considered in similar cases belies any possibility that retention of employees, recognition of a union or adoption of a collective bargaining agreement could be relevant to them.[4] But the Board cannot place sole reliance on the history of bargaining or the degree of organization without abusing its discretion. Section 9(c) (5) of the Act provides that "[i]n determining whether a unit is appropriate for the purposes [of collective bargaining] the extent to which the employees have organized shall not be controlling."
 
 
 18
 Because the reason the Board gave for its conclusion that the Red Lion unit was appropriate is legally insufficient standing alone, we are called upon to review the propriety of the Board's exercise of discretion with, in effect, no Board explanation for its action. To do so would be tantamount to this Court substituting its discretion for the Board's. Such a course is clearly impermissible. Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). While it might be argued that the record contains sufficient evidence to allow us to infer that the Board actually had additional though unarticulated reasons or could have found additional reasons for its action, we are not free to do so. Compare National Labor Relations Board v. Metropolitan Life Ins. Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). Rather, the Board bears the burden of stating reasons for its action and making sufficient factual findings to support them. Only when the Board does so can it clearly show that it has legitimately exercised its discretion. Because it has failed to bear this burden, we adopt the procedure followed by the United States Supreme Court in National Labor Relations Board v. Metropolitan Life Ins. Co., supra, and remand this case to the Board. On remand the Board will have an opportunity to make whatever additional factual findings and to articulate whatever reasons it believes will be pertinent to its ultimate disposition of this case.
 
 
 19
 This matter will be remanded to the Board for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 174 N.L.R.B. No. 113 (1969)
 
 
 [2]
 Because of our disposition of this case, we need not concern ourselves, at this time, with the validity of Home's reasons for these actions
 
 
 [3]
 "Reasons differ from findings in that reasons relate to law, policy and discretion rather than to facts." They allow the appellate court to understand why the agency has decided as it has and what the court is being called upon to review. 2 Davis, Administrative Law sec. 16.12 (1958)
 
 
 [4]
 When the Board is called upon to make a unit determination and both single plant and multiplant units are sought, it normally considers in addition to the bargaining history of the units, some or all of the following factors:
 (1) The geographical location of the plants;
 (2) The extent of employee interchange;
 (3) The degree of functional integration of the plants;
 (4) The similarity of job skills at the plants.