CHARLESTON v. WERNER.

1. PUBLIC HEALTH—POLICE POWERS—FILLING LOTS.—An ordinance passed by the city council of Charleston, pursuant to power conferred by an act of the legislature, requiring lot owners to fill up their low lots when declared to be injurious to health, or else that such lots shall be filled up by the city council, and the cost recovered of the owner, provided it does not exceed one-half the value of the lots, is not governed by the principles of law applicable to a local tax for improvements, but to the police power over the subject of public health.

2. IBID.—IBID.—IBID.—DEMURRER.—A complaint having alleged that the filling of such a lot did not exceed one-half its value, a demurrer admitted this to be true, and, therefore, it was immaterial in this case that the city ordinances made no provision for a case where the cost of the work exceeded one-half the value of the lot so filled up, as required by an amendatory statute passed after the city ordinances were enacted.

3. IBID.—IBID.—IBID.—MUNICIPALITY.—A statute authorizing the filling up of low lots in a city, when found to be injurious to the health of the community, is within the extensive powers of the State over public health, known as "police powers," and is, therefore, not unconstitutional. And these powers of the State may be delegated by her to a municipality.

Before KERSHAW, J., Charleston, February, 1892.

The question presented by this appeal was whether facts sufficient to constitute a cause of action were stated in the following complaint:

The said city council of Charleston, plaintiff, complaining of the said Mrs. Doris Werner, the defendant, alleges:

I. That it, the said plaintiff, is a municipal corporation, under the laws of the said State of South Carolina.

II. That by sections 227 and 228 of the revised ordinances of the city of Charleston, ratified in city council on the 26th day of September, 1882, it is ordained and enacted as follows, that is to say:

SEC. 227. Whenever it shall appear to the board of health that any low lots or vacant grounds are in a condition to injure or endanger the public health, it shall be the duty of the said board of health to appoint a board of inspection, to be composed of the city registrar and four members of the board of health (any three of whom shall be a quorum), whose duty it shall be to enter upon and thoroughly examine such lots or vacant grounds, and determine by the vote of not less than three of the said board, whether such lots or vacant grounds shall be drained, filled up, levelled, or otherwise so improved, as to remove the nuisance and evil there complained of or existing. And should the said board of inspection be of opinion that such lots or vacant grounds ought to be filled up, levelled, or drained, they shall submit a detailed report to the city council, setting forth the actual condition thereof, and suggesting the mode, materials, and extent to which such low lots or vacant grounds shall be filled up, levelled, or drained; upon which report council shall take such order and direction thereon as they may deem expedient.

SEC. 228. In case council shall order the report of said board of inspection, made as aforesaid, to be carried into effect, or shall direct such low lots to be filled up, levelled, or drained, it shall be the duty of the city registrar to serve a *notice*, in writing, on the owner or owners of such low lots or vacant grounds, directing said owner or owners to have such lots or vacant grounds filled up, levelled, or drained, as council may require, to such extent, in such manner, with such materials, and within such reasonable time, as may be prescribed by the said order of the city council. And, in case of neglect or refusal of such owner or owners to obey said notice, it shall be the duty of the city registrar to cause such lots or grounds to be filled up, levelled, or drained, in the manner prescribed in the said notice, under the order and direction of the said board of inspection. The expenses and charges paid and incurred in case such lots or grounds shall be filled up, levelled, or drained, under the order of the board of inspection, shall be paid in the first instance out of the city treasury, and shall afterwards be recovered, with interest and costs of suit, in an action of debt, to be brought

by council in the Court of Common Pleas, against the owner
or owners of such lots or grounds. The city engineer shall,
whenever required, attend the said board of inspection on the
examination of low lots and grounds, and under their direction
make plans for filling, levelling, and draining the same.

III. That the defendant is the owner in fee simple of all that
lot, piece, or parcel of land, with the buildings thereon, situate,
lying, and being on the west side of Smith street, in the city of
Charleston, now or formerly known as No. 47 on said street,
measuring and containing ninety-three feet in front on Smith
street by two hundred feet in depth, be the same more or less.
Butting and bounding north on land of Dr. John C. Faber,
east on Smith street aforesaid, south on land of W. J. Parker,
and west on land formerly of Thomas Bennett.

IV. That the rear portion of the said lot of the said defend-
ant was a low lot, extending out into what was formerly a part
of Bennett's mill pond, and in a condition to injure and en-
danger the public health.

V. That the board of health of the said city of Charleston,
as required by the ordinances hereinbefore recited, appointed
a board of inspection, composed of the city registrar and four
members of the board of health, to enter upon and thoroughly
examine said lot, and determine whether the same should be
drained, filled up, levelled, or otherwise so improved as to re-
move the nuisance and evil there existing. That the said
board of inspection inspected the said premises, determined
that the said lot should be filled up to a proper level above the
street, and, pursuant to such determination, the said board sub-
mitted a detailed report thereof to the city council, setting forth
the actual condition thereof, and suggesting the mode, mate-
rials, and extent to which the said lot should be filled up.
That thereupon the said city council, by a resolution passed
at a meeting held January, 1888, ordered and directed that
the findings of the said board of inspection be carried into
effect.

VI. That thereupon the city registrar, on the 28th day of
January, 1888, did serve a notice in writing, as required by
the ordinance aforesaid, on the said defendant, the owner of

the said low lot of land, requiring her to fill the said lot with sand, gravel, clay, or shell, to a level even with the grade pegs placed by the city engineer, within sixty days from the date of said notice, and notifying her, the said defendant, that if the said filling was not done within the time specified, that the same would be done by the city council at her expense.

VII. That the said sixty days having expired, the city registrar did cause the said lot to be filled up in the manner prescribed in the said notice, under the order and direction of the said board of inspection, depositing upon the said lot fifteen hundred and three cubic yards of earth, at an expense of eleven hundred and fifty-seven and 10-100 dollars, which hath been paid out of the city treasury, and that no part thereof has been paid by the said defendant; and the plaintiff alleges that the said sum of $1,157.10 does not exceed one-half the value of defendant's lot of land.

Wherefore, plaintiff demands judgment against the said defendant for the said sum of eleven hundred and fifty-seven and 10-100 dollars, with interest and costs.

*Messrs. Mordecai & Gadsden,* for appellant.

*Mr. Charles Inglesby,* contra.

March 21, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This is an action by the city council of Charleston to recover from the defendant, Doris Werner, the amount paid by the city council for filling up a low lot in the city, the property of the said defendant, which said lot, or a portion thereof, had been inspected by the "board of health," determined to be a nuisance dangerous to the public health, and ordered to be filled. The defendant having been notified, as required by law, to fill the said lot, and having failed so to do, the same was filled by the city authorities, and the present action is for the recovery of the cost of the said filling, viz., for 1,503 cubic yards of earth at an expense of $1,157.10, which has been paid out of the city treasury. The plaintiff alleges that no part thereof has been paid by the said defendant, and that said sum does not exceed "one-half the value of defend-

ant's said lot of land." Whereupon plaintiff demands judgment against the said defendant for the said sum of $1,157.10, with interest and costs.

When the complaint was read, the defendant, by her counsel, interposed a verbal demurrer, and moved to dismiss the complaint, for the reason that it did not state facts sufficient to constitute a cause of action. His honor, Judge Kershaw, overruled the demurrer, and the defendant appeals to this court upon the following exceptions (the complaint in full should appear in the case): *First.* Because sections 227 and 228 of the revised ordinances of the city of Charleston (September 26, 1882,) are in violation of the fifth amendment to the Constitution of the United States, as well as section 23, article I., of the Constitution of South Carolina, because said sections authorize a personal judgment against the defendant as the alleged owner of the lot described in the complaint, &c. *Second.* Because the act of the General Assembly of the State of South Carolina, "To authorize the city council of Charleston to fill up low lots and grounds in the city of Charleston in certain cases, and for other purposes," &c. (December 18, 1830), as well as the act to amend the same (December 19, 1883), and each and both, are in violation of, and in contravention to, the fifth amendment to the Constitution of the United States, as well as section 23 of article I. of the Constitution of the State of South Carolina. *Third.* Because the oral demurrer should have been sustained, in that it appears upon the face of the complaint, that the cost of the alleged improvement was not apportioned among all the property owners of the special taxing district, and that there was no system of apportionment whatever. *Fourth.* Because the said sections of the revised ordinances of the city of Charleston are *ultra vires* and void, in that no provision is made in said sections for condemning the land, should the cost of the proposed improvement exceed one-half of the value of the land.

There seems to be some misapprehension as to the nature and object of this proceeding. Reference is made to the "alleged improvement" and "the apportionment of the costs among all the property owners of the special taxing district." This clearly refers to the principles applicable

to a local tax, for the purpose of making improvements, such as paving a street or opening one. But, as we understand it, this is not a matter of taxation at all, either general or local. The object of this proceeding is not to raise money to support the city government, or to improve the value of property in a particular locality (which may, however, be incidentally the result), but to put in operation the police power granted to the city council for the purpose of preserving the health of the city. It is the machinery provided for enforcing the law against nuisances which menace the health of the public. "A law which might be invalid as an exercise of the right to tax for revenue, might be sustainable where its purpose was the promotion of the general public health or morals. In exercising the power of taxation, no discriminations are to be made; while in the exercise of police power, the State is ordinarily to be governed only by considerations of what is for the public welfare." 18 Am. & Eng. Enc. Law, 544, and notes. We must not, therefore, confound an exercise of the police power with the nice distinctions which belong to the doctrine of taxation for local improvements.

In 1793, the city council of Charleston was incorporated with the usual police powers. 7 Stat., 97. In 1830, the charter was amended, giving expressly the following police powers: "That whenever the city council of Charleston shall be of opinion that any lots or grounds within the city, belonging to any person or persons, &c., are in a state of nuisance, or so situated, that in warm or unhealthy seasons a nuisance may thereby be created, and the health of the city endangered; or whenever the land or streets in the vicinity of said lots may become liable to injury therefrom, the city council, &c., shall have full power and authority to cause a notice to be served on the owner of such lots or grounds, directing him or them to have the same filled up to such extent, in such manner, with such materials, and within such reasonable time, as may be prescribed in such notice; and in case the owner of such lot shall neglect or refuse to fill up said lots, that the said city council are hereby authorized and empowered to have such lots filled up, &c. II. All expenses or charges paid or incurred by the

said council, in case such lots shall be filled up under their authority, shall and may be recovered in an action of debt against the owner or owners of such lots or grounds: *Provided*, the said expenses and charges do not exceed more than half the value of said lots or grounds," &c. In 1839, the city council passed an ordinance containing two sections, in conformity with the above act, which, in 1882, were re-enacted in the revised ordinances as sections 227 and 228. In 1883, the General Assembly again amended the charter by adding the following words: "*Provided*, however, that if the estimated expenses and charges of filling said lots shall exceed more than one-half the value thereof, then, and in that event, the said city council shall have power and authority to condemn the said lots, and upon paying to the owner or owners the price that may be fixed therefor, as hereinafter provided, the title thereof shall vest in the said city council of Charleston," &c.

It will be observed that the complaint recites sections 227 and 228 of the revised ordinances of the city, which are in exact conformity to the terms of the act of 1830; and, if that act is constitutional, it is difficult to see the point made by the last ground of appeal, that "the said sections of the revised ordinances are *ultra vires* and void, in that no provision is made in said sections of said ordinances for *condemning the land*, should the cost of the proposed 'improvement' exceed one-half of the value of the land," &c. The right *to condemn the land, and pay for it*, is mentioned for the first time in the *amendment of 1883*, which was *long after* the said sections of the ordinances were passed, and that right—to condemn—was given only in the event that the charge of filling the lots "*shall exceed more than one-half the value thereof.*" This was not a case falling in that category, for the complaint alleged distinctly, "*that the said sum of $1,157.10 does not exceed one-half the value of defendant's lot of land*," &c. The oral demurrer, for the purposes of the issue made by it, *admitted that fact*, and, therefore, it was not necessary to make that point under the amendment of 1883, which did not cover the case, and the matter stood precisely as if that act had never been passed.

As urged for the plaintiff: "In 'the amendment of 1883, we have no express *provision for*, but an unmistakable *exclusion of*, such a case as the present."

Then the only question in the case is, whether the act of 1830, amending the charter of the city council of Charleston, is constitutional or not. The State, through the law-making body, certainly possesses the *police power*, which, from its very nature, has no well defined limits, but must be as extensive as the necessities which call for its exercise. Although not clearly defined, it is an extensive power, distinguished not only from the power of taxation, but also from that of eminent domain, and in its widest sense is said to be the general power of a government to preserve and promote the general welfare, even at the expense of private rights. "It is difficult, if not impossible, to define the exact scope of the term. The Supreme Court of the United States have declined to do so, stating that they would only determine each case as it arose." *Stone* v. *Mississippi*, 101 U. S., 814, and 18 Am. & Eng. Enc. Law, 740, and notes.

The title of the act in question was, "To authorize the city council of Charleston to fill up low lots and grounds in the city of Charleston, in certain cases," &c. Its whole and exclusive purpose was to promote and secure the health of the city of Charleston; and it would be difficult to conceive of a clearer case of the exercise of the police power. "Health being the *sine qua non* of all personal enjoyment, it is not only the right but the duty of a State to pass such laws as may be necessary for the preservation of the health of the people. For this purpose a State may compel the clearing and drainage of lands, which might otherwise create malarial or other diseases; or provide in any other reasonable way for the preservation of the public health," &c. See *The Council* v. *Baptist Church*, 4 Strob., 307; *Railroad Company* v. *Gibbes, Treasurer*, 24 S. C., 60; *Town Council* v. *Pressley*, 33 *Id.*, 56; 18 Am. & Eng. Enc., 750, and notes. We have no doubt that the amending act of 1830 was constitutional, and that the General Assembly had the right to delegate the *police power* to the city council of Charleston.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.