13728

HESLEP v. STATE HIGHWAY DEPT. OF SOUTH CAROLINA
*ET AL.*

(171 S. E., 913)

*Mr. D. W. Robinson, Jr.,* for petitioner,

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey* and *J. Ingram Wilson, Assts. Attorneys General.*

December 5, 1933.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The petitioner, Heslep, a resident of Richland County and owner of two motor vehicles, brings this action in the original jurisdiction of the Court, seeking to have declared unconstitutional an act of the General Assembly (38 Stat. at Large, p. 541), approved May 22, 1933, and to have the respondents enjoined from interfering with the operation of his automobiles on the highways of the state during the months of November and December, 1933.

There is no dispute as to the material facts. In December, 1932, Heslep made application to the highway department, in accordance with the requirements of Chapter 125 of the Code of 1932 (Section 5867 *et seq.*), for registration and

licensing of his Packard sedan for the year 1933; he paid the required annual license fee of $24, and the vehicle was duly registered and assigned license No. F-740, the registration card and license plates corresponding to such number being duly received and accepted by him. The 1933 act, the constitutionality of which is here challenged, fixed the new license year to begin November 1, 1933, and provided that licenses should be procured by the owners of motor vehicles as required by the terms of that act. After the passage of this statute, Heslep acquired another automobile, an Auburn sedan, which, upon the payment by him of a license fee of $11, was registered in July, 1933, and assigned license No. E-4080.

The validity of the act is attacked upon two grounds. It is contended, in the first place that the purchase by Heslep of the 1933 license for his Packard sedan, in December 1932, constituted a contract between him and the State Highway Department; and that the act of May 22, 1933, impairs the obligation of this contract, in that it deprives the petitioner of the right "to operate his car in November and December, 1933, except upon certain other conditions which were not attached to the original contract," and so violates Section 10 of Article 1 of the Federal Constitution, and Section 8 of Article 1 of the State Constitution.

The following provisions of Section 5894 of the Code were of force and effect at the time of the issuance of the license for the Packard sedan: "All licenses shall expire on the 31st day of December, following the day of issuance. Annual license shall thereafter be issued between the first day of January and the first day of February of each year."

One of the purposes of the statute of 1933, as indicated by its title, was "to Establish the License Year for Motor Vehicles." Section 1 provides "that annually on or before the thirty-first day of October every owner of a motor vehicle * * * shall procure from the State Highway Department motor vehicle licenses for the next succeeding

license year beginning on the first day of November * * * "; and subjects any person to the penalties provided by law who operates any motor vehicle on or after the 1st day of November without the license provided for in the act.

The authorities are in general agreement that a license is in the nature of a special privilege, and is not a property right, or a contract.

In 17 R. C. L., 476, with regard to the obligation of contracts in general, we find: "Following the general principle that a license is not a contract, it is clear that it does not in itself create any vested right, or permanent right, and that free latitude is reserved by the legislature to impose new or additional burdens on the licensee, or to alter the license, or to revoke or annul it. And this is the general rule notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired."

To the same effect is 37 C. J., page 168: "A license is merely a permit or privilege to do what otherwise would be unlawful, and is not a contract between the authority, federal, state, or municipal, granting it and the person to whom it is granted; neither is it property or a property right, nor does it create a vested right; nor is it taxation."

In *Huddy on Automobiles* (7th Ed.) page 81, the writer says: "A license to operate an automobile is merely a privilege. It does not constitute a contract, and hence does not necessarily pass to a purchaser of the vehicle. It is personal to the one to whom it is granted."

As to the general purpose of registration, the same writer, at page 83, has this to say: "The reason assigned for the necessity of registration and licensing is that the vehicle should be readily identified in order to debar operators from violating the law and the rights of others, and to enforce the laws regulating the speed, and to hold the operator responsible in cases of accident. The legislatures have deemed

that the best method of identification, both as to the vehicle and the owner or operator, is by a number on a tag conspicuously attached to the vehicle. In case of any violation of law this furnishes means of identification, for, from the number, the name of the owner may be readily ascertained and through him the operator. Such acts are not passed merely for the purpose of revenue but have for their object the protection of the public."

It is now well recognized by the Courts, and has been so held in a number of our decisions, that motor vehicles are dangerous instrumentalities. It is a matter of common knowledge that their negligent and careless operation upon the highways have resulted in the injury or death of many thousands of people, and that fatalities continue as daily occurrences. It follows, therefore, that such vehicles are a proper subject of police regulation, and that the safety of the public demands the enactment and rigorous execution of laws in relation to their use upon the public roads.

The petitioner contends, however, that the amount of the license fees annually collected by the department is more than necessary to pay the cost of the registration of such vehicles and of their supervision upon the highways; and that, therefore, their registration is not for the purpose solely of identifying and regulating them, but that the statute is, and was intended to be, a revenue producing measure.

It is not made to appear from the record, as a fact agreed to by counsel, what amount of license fees is annually collected, or how much, if any, such amount exceeds the cost of registration, etc. Conceding, however, as contended by petitioner, that the fees collected are more than are necessary for the purposes named, we still think that his contention must fail. As already indicated, the authorities are to the effect that the regulation of the use of motor vehicles upon the public highways is a matter within the police power of the State, and that a license granted for

such a vehicle is not a contract between the State and the licensee, but is merely a permit or privilege to do what otherwise would be unlawful. The requirement for registration of motor vehicles contained in the statute before us, although revenue may be derived therefrom, is undoubtedly one of police regulation. We hold, therefore, in accord with reason and authority, that where the fees obtained for licenses granted are in excess of the amount necessary to pay the cost of registration, etc., of motor vehicles registered, and such excess is applied exclusively to the maintenance of the highways and to remedy injuries which such vehicles have caused, as concededly is or would be the case here, no contractual elements enter into the granting of such license or licenses, and the rule forbidding the impairment of contracts within constitutional limitations is not applicable and may not be enforced. Petitioner's first contention, therefore, is overruled as being without merit.

It is urged, in the second place, "that the Act of 1933 is violative of the due process and equal protection provisions of the Federal Constitution (Amendment 14) and the taking without compensation provision of the State Constitution (Article 1, § 17) ; in that the credit memoranda issued pursuant to Section 5 of this act are unreasonably burdened with the necessity of purchasing a full year's license; in that Section 4 of the act, requiring the purchasing of a six months' license for any one purchasing a car prior to October 31, 1933, is so unreasonable as to be unconstitutional."

Section 5 is as follows: "That in case of application for licenses for any motor vehicle for the license year beginning on the first day of November, 1933, there shall be credited such pro-rate amount as may be proper on account of the full annual license fee heretofore paid for the year ending on the thirty-first day of December, 1933."

And Section 4, in part: "All Nineteen Hundred and Thirty-three licenses issued between the date of approval of

this Act and the thirty-first day of October, Nineteen Hundred Thirty-three, shall be issued for the license year ending on the thirty-first day of October, Nineteen Hundred Thirty-three, at one-half of the annual rates now required by law. * * * "

While the exercise of the police power of the State, as contended, must not be unreasonable or arbitrary, we are of opinion that the objections here made to the act are without substantial merit. It is provided by Section 5 that every owner of a motor vehicle, who purchased an annual license under the old law, will be allowed in his purchase of an annual license for the same car under the new act, "such prorate amount as may be proper on account of the full annual license fee heretofore paid for the year ending on the thirty-first day of December, 1933." And although no credit is allowed in the purchase of a license for six months for the same car (Section 3), we do not think that such a provision, or failure to so provide, is so unreasonable or arbitrary as to render the act unconstitutional. Undoubtedly, the granting of the six-month license under Section 3 of the statute, something not provided for in the old law, is a privilege which the legislature properly may have denied, if it had seen fit to do so.

It is also contended that the act is unreasonable and oppressive in requiring the petitioner, in buying the license for his Auburn sedan, in July, 1933, to purchase a license for a full six-month period although he could use it for only about ninety days. We do not agree with this contention. While this requirement of the act (Section 4) may be regarded as a hardship in a case where a motor vehicle is allowed to operate under such license, not for six months, but for only a very short period of time, we think it was well within the power of the Legislature to burden the privilege granted as was done. This view is fully supported by authority. On consideration of the entire act, we are of opinion that the petitioner has failed to sustain the burden

cast upon him of showing its unconstitutionality beyond a reasonable doubt.

It has always been, and is now, the law that the General Assembly may enact any act it desires to pass, if such legislation is not expressly prohibited by the Constitution of this State, or the Constitution of the United States. We find nothing in either of the Constitutions which prohibited the enactment of the law attacked in this case.

It is the judgment of the Court that the injunction prayed for be refused and the petition dismissed.

And it is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.