## 19698

J. C. NEEL, Individually, and representing the taxpayers of Newberry County, South Carolina, Appellant, v. Curtis E. SHEALY et al., Respondents.

(199 S. E. (2d) 542)

*Messrs. Harley & Verner,* of Newberry, *for the Appellant,* cite:

*Messrs. Randall T. Bell, Asst. Atty. Gen.,* of Columbia, *Thomas H. Pope,* of Newberry, and *Sinkler Gibbs & Guerard,* of Charleston, *for Respondents,* cite:

September 25, 1973.

*Per Curiam:*

This case is before us on appeal from the order of the Honorable Francis B. Nicholson, presiding judge of the Court of Common Pleas for Newberry County. We are of the opinion that his order properly sets forth and disposes of all the issues raised on the appeal to this Court. Let his order, with minor deletions of matters not necessary to disposition of the issues, be printed as the directive of this Court.

BUSSEY, J., concurs in the result.

## ORDER OF JUDGE NICHOLSON

By Act bearing Ratification No. R-108, enacted at the 1973 Session of the South Carolina General Assembly, which became effective upon its enrollment on March 7, 1973, the South Carolina Constitution of 1895 was amended by the insertion therein of a new Article VIII to the Constitution in lieu of Article VIII of the Constitution of 1895. Such amendment to Article VIII will hereinafter in this Order be referred to as "new Article VIII." Among the provisions contained in new Article VIII, are the following provisions which are at issue in this litigation:

"Section 1. The powers possessed by all counties, cities, towns and other political subdivisions *at the effective date of this Constitution* shall continue until changed in a manner provided by law."

"Section 7. The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five shall be established. *No laws for a specific county shall be enacted and no county shall be exempted from the general laws* or laws applicable to the selected alternative form of government." (emphasis added)

Plaintiff in this case brings this action individually and representing all other taxpayers of Newberry County, South Carolina, seeking a declaratory judgment that new Article VIII (specifically those Sections thereof hereinabove quoted) precludes the County Council of Newberry County from exercising the authority granted said County Council by Act No. 808 of the 1971 Session of the General Assembly of the State of South Carolina (hereinafter referred to as the "Bond Act"), to issue general obligation bonds on Newberry County in an amount not to exceed $2,250,000 for hospital purposes. It is plaintiff's contention that the pro-

hibition contained in the last sentence of Section 7 of new Article VIII renders the Bond Act unconstitutional and therefore, not valid authority for the issuance of the bonds therein contemplated; Plaintiff also contends that Section 7 of new Article VIII also renders unconstitutional Act. No. 925 enacted at the 1970 Session of the General Assembly of the State of South Carolina, which created the County Council of Newberry County as the governing body of Newberry County on the grounds that such Act is "special legislation" and, therefore, prohibited by Section 7 of new Article VIII.

It is further contended by Plaintiff that the language of Section 1 of New Article VIII preserves for counties, cities towns and other political subdivisions only those powers possessed by such political subdivisions "at the effective date of this Constitution" which language Plaintiff interprets as meaning December 31, 1895—the effective date of the South Carolina Constitution of 1895.

Named as Defendants in this action are the members of the County Council of Newberry County, and since this suit includes a determination as to the constitutionality of a statute enacted by the General Assembly of South Carolina, and an interpretation of the Constitution of South Carolina, the Attorney General of South Carolina. Defendants have answered generally admitting the allegations of the Complaint; however, denying those allegations as to the unconstitutionality of the Bond Act and the Act establishing the County Council of Newberry County.

Some consideration must be given to the legislative action which produced new Article VIII. By Concurrent Resolution of the General Assembly approved April 7, 1966, the Committee to Study the Constitution of 1895 was created and was thereafter continued by Concurrent Resolutions approved March 22, 1967 and May 24, 1968. Its report to the General Assembly was submitted in 1969.

It was prescribed by the Concurrent Resolution that:

"The committee shall study the Constitution and shall make recommendations to the General Assembly which shall include, but shall not necessarily be limited to:

(1) Whether a convention should be called for the purpose of drafting a new Constitution;

(2) Whether a series of general amendments can be proposed which will eliminate the archaic provisions of the existing Constitution and strengthen it in such other areas, so that it will provide a workable framework with proper safeguards for sound State, County and local governments.

"The committee shall in either event recommend (a) provisions which in its judgment should be included in a new Constitution; or (b) the amendments necessary to accomplish the strengthening and revision of the present Constitution."

The Committee's report submitted an entirely new Constitution, but recomended against the Convention procedure and instead recommended that a method be obtained whereby the new Constitution could be submitted on an Article by Article basis. As a consequence of these recommendations, Article XVI of the 1895 Constitution was rewritten so as to permit Aritcle by Article submission at the General Elections to be held in 1970 and 1972 (This period of time has been extended by a further amendment to Article XVI, so that the Article by Article method of submission may be utilized in the General Election to be held in 1974).

The Committee's report creates an entirely new Constitution and it is doubtless for that reason that Section 1 of new Article VIII relates itself to "the effective date of this Constitution." Certainly, as used in the Committee's report, the effective date of this Constitution was intended by the Committee to mean that date upon which the entirely new Constitution was adopted. Unfortunately, in submitting the question to the electorate, in accordance with Article XVI as

amended, this language was not changed and new Article VIII was proposed as an amendment to the Constitution of 1895 as follows:

"There is proposed the following amendment to the *Constitution of this State.* Strike Article VIII in its entirety and insert in lieu thereof the following:" (emphasis added).

The ratifying act of March 7, 1973 likewise provides:

"SECTION 1. The amendment to *Article VIII of the Constitution of South Carolina, 1895, proposed . . . is ratified and declared to be a part of the constitution* so that Article VIII is amended to read as follows:"

Thus, new Article VIII has become a part of the Constitution of 1895, which expressly states that it shall be effective on and after December 31, 1895—thus the argument that all of the provisions of new Article VIII must be construed as though it had been in the Constitution since 1895.

Put simply, does new Article VIII speak from December 31, 1895 or from March 7, 1973?

The South Carolina Supreme Court in a recent decision has made clear the applicable rules to be applied in cases involving the construction of constitutional amendments. In the case of *McKenzie v. McLeod,* 251 S. C. 226, 161 S. E. (2d) 659 (1968), the Court stated as follows:

"Constitutional amendments originate in the form of Resolutions in the General Assembly, which proposes specific changes in the Constitution. They are sponsored by the General Assembly and become effective through legislative process. Hence, when construing a constitutional amendment, the Court applies rules similar to those relating to the construction of statutes, in its effort to determine the intent of its framers and of the people who adopted it. *Miller v. Farr,* 243 S. E. 342, 133 S. E. (2d) 838."

Hence, it is clear that this court must look to the rules generally applicable to, the construction of statutes in order to determine the intent of the framers of new Article VIII, and the intent of the electorate which approved new Article VIII at the general election on November 7, 1972, and the intent of those who ratified new Article VIII.

As to Section 7 of new Article VIII, the gravamen of Plaintiff's Complaint is that the prohibition therein contained against the enactment of laws for a specific county or the exemption of any county from general laws applies retroactively to repeal or make unconstitutional all "special legislation" enacted by the South Carolina General Assembly from December 31, 1895 to March 7, 1973, the ratification date of new Article VIII.

In the construction of statutes there is a presumption that statutory enactments are to be considered prospective rather than retrospective in their operation unless the intention to make them retrospective is clearly apparent from the terms thereof. This principle has long been settled law in South Carolina. In the case of *Curtis v. Renneker*, 34 S. C. 468, 13 S. E. 664 (1891), Chief Justice McIver stated the rule as follows:

"The rule that a statute will never be given such a [retroactive] construction, unless it is required by the express words of the statute or must necessarily be implied from such words, is too well settled to need the citation of any authority to support it."

As asserted by Chief Justice McIver, this salutary rule of statutory construction is too well settled to require citation; a great number of decisions of the South Carolina Supreme Court have recognized this rule and this court has been apprised of no decision ruling to the contrary.

With the presumption of prospective application before us, we turn now to a consideration of the language contained in Section 7 of new Article VIII.

Section 7 begins with a mandate to the General Assembly that it "shall provide by general law . . ." for the organization, duties, structure, functions and responsibilities of counties. Clearly, it is impossible to interpret this language as intended to apply to any time prior to the ratification date of new Article VIII. Section 7 goes on to provide that "alternate forms of government . . . shall be established." Again, this court is unable to glean any intention other than of a prospective application of this provision. Certainly alternate forms of County government is altogether a new concept.

The final provision of Section 7, which lies at the heart of this case, reads as follows:

"No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

Despite the obviously prospective tenor of the first two provisions of Section 7, Plaintiff asserts that this third provision of Section 7 evinces an "intent of its framers and of the people who adopted it," that it be applied retrospectively to the end that all "special legislation" passed prior to the ratification date of new Article VIII is thereby rendered unconstitutional. Such a construction, I believe, is against all reason and flies in the face of all logic. The language of Section 7 is, in its tense and in its tenor, consistent throughout and contains no basis for the interpretation proposed by Plaintiff. It need only be noted that the logical conclusion of Plaintiff's contention in this case would be the obliteration of virtually all of Title 14 of the Code of Laws of South Carolina, 1962, as amended, including governmental systems of the great majority of counties in this State. It is an absurdity to attribute to the "framers and the people who adopted it" such an intention with respect to Section 7 of new Article VIII. There can be no question that the prohibition against the enactment of "special legislation" for counties was intended to apply from the ratification date of new Article VIII thence forward; however, this in no way demon-

strates an intent that its application should also be in any way retrospective.

Apropos of this view and particularly applicable to the case at bar is the language of Justice Gary in the case of *Mutual Aid Loan & Investment Co. of Atlanta, Ga. v. Logan,* 55 S. C. 295, 33 S. E. 372 (1899). After quoting the language of Chief Justice McIver hereinabove quoted from the case of *Curtis v. Renneker,* Justice Gary states as follows:

"In the first place, it cannot for a moment be contended that there are any express words in the statute manifesting an intention on the part of the legislature that it should have a retroactive operation; nor, in the second place, are there any words from which it must necessarily be implied that it was intended to give the act this effect . . . A change of policy was undoubtedly intended, but, as there is nothing in the act demanding a construction different from that generally followed in the interpretation of statutes, its operation must be held to be prospective, and not retroactive."

Obviously, the "framers and . . . the people who adopted it" intended that a drastic change be made in the policy theretofore prevalent of the adoption of a great number of "special acts" applicable only to particular counties; however, absent any indication of an intention to apply this policy retroactively, this court will not so interpret this constitutional provision.

It is, therefore, the holding, of this court that Section 7 of New Article VIII of the South Carolina Constitution does not render unconstitutional either the Bond Act or the Act establishing County Council of Newberry County, which acts until repealed or superseded by general laws are good and valid authority for the issuance of the bonds contemplated by the Bond Act and for the exercise of the governmental powers heretofore granted County Council of Newberry County.

276

There is a further reason to reach the conclusion that Section 7 is inoperative as to legislation enacted prior to March 7, 1973. My interpretation of Section 7 that it is not self-executing and requires implementation by legislation creates a conflict between that portion of Section 1 relating to the "effective date of this Constitution" and Section 7 which speaks prospectively. It is the duty of the court to harmonize statutory conflicts. In so doing one necessarily resorts to legislative intent. In the light of the history of its adoption and the clear intent of the Committee which presented an entirely new Constitution, rather than a series of amendments, it is clear that it was intended that new Article VIII speak from the occasion of its ratification rather than the effective date of the 1895 Constitution.

A court is not at liberty to change the wording of a constitutional provision or to correct what are obviously typographical errors. *Bray v. City Council of Florence,* 62 S. C. 57, 39 S. E. 810 (1901). Nevertheless, a court is under a duty to harmonize conflicting provisions in legislation so as to give effect to the clear legislative intent. I have demonstrated that the clear legislative intent of new Article VIII is prospective and hence I have no difficulty in reaching the conclusion that despite the words used in Section 1, new Article VIII must be construed to speak from the date of its ratification, viz., March 7, 1973.

It is, therefore, ordered that judgment be entered in favor of the Defendants in this case.

And it is so ordered.