21984

GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant, v. John W. LINDSAY, as Chief Insurance Commissioner and The South Carolina Reinsurance Facility, Respondents.

(306 S. E. (2d) 860)

*R. Bruce Shaw* and *Thornwell F. Sowell, III,* both of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellant.*

*E. W. Laney, III,* and *Thomas C. Salane,* both of *Turner, Padget, Graham & Laney;* and *L. Kennedy Boggs,* Columbia, *for respondents.*

Aug. 31, 1983.

*Per Curiam:*

This appeal is taken from a judgment of the circuit court, which affirmed the imposition of additional assessments against appellant Grain Dealers Mutual Insurance Company for excessive utilization of the South Carolina Reinsurance Facility. We affirm and, with certain deletions adopt the judgment of the trial court.

The South Carolina Reinsurance Facility ("the Facility") was established as part of the Automobile Reparation Reform Act of 1974, Act 1177, now appearing as Sections 38-37-710 through 38-37-790, Code of Laws of South Carolina, 1976. In essence the Facility exists to achieve a relatively fair distribution of burdens imposed upon automobile insurers by the mandatory provisions of Section 38-37-310, Code. Under the Act, automobile insurers are permitted to "cede" risks to the Facility for reinsurance. In turn, losses incurred on these ceded risks are to be apportioned among the participating insurers. It will be noted that "equitable" is a key word appearing throughout the statute establishing and empowering the Reinsurance Facility.

To prevent excessive and unfair use of the Facility by insurers, Section 38-37-950, Code, declares that:

> A *prima facie* case of excessive or unreasonable utilization shall be established upon a showing that an automobile insurance insurer or a group of such insurers under the same management has ceded or is about to cede more than thirty-five percent of total direct written premiums on South Carolina automobile insurance as reported in the most recently filed annual statement(s) of such insurer or group.

Section 38-37-730, Code, directs the Facility to develop a Plan of Operation to accomplish "equitable apportionment" of expenses and losses among members. Pursuant to this statutory charge the Facility has established an "Accounting Rule" whereby excessive cessions are taxed to the offending

insurer by requiring an additional contribution to Facility losses in the amount of two dollars for every "overceded" premium dollar. This amount is paid above and beyond the insurer's normal pro rata share. It appears from the record of this appeal that the Facility Plan of Operation was the product of a cooperative endeavor in which insurers fully participated and consented to the apportionment scheme.

The appellant, Grain Dealers Mutual Insurance Company, does not dispute the fact of its excessive cessions during the fiscal year 1975-1976. On appeal from the Insurance Commissioner to the Circuit Court, Grain Dealers contended that more than a *prima facie* showing of overcessions was required to justify the taxation of an additional contribution. That position appears to have been abandoned on this appeal.

On appeal to the circuit court, Grain Dealers also contended that the Insurance Commissioner failed to comply with the provisions of Section 1-23-350, Code, which requires concise and explicit statement of facts underlying an administrative determination. While we would agree the Commissioner's order could have been more explicit in reciting the finding of a *prima facie* overcession, we concur with the holding of the trial court that this action was pending prior to the adoption of the South Carolina Administration Procedures Act and therefore was not governed by its standards. Section 1-23-400, Code.

We are left with appellant's attack upon the taxation scheme as a "penalty" adopted in excess of the statutory grant of power to the Facility. We disagree, as did the trial court, and here adopt the following from the Order of the trial judge as fully disposing of this issue:

In large part the problem presented in this appeal stems from the Facility's inartful use of the term "penalty" to describe its rule. But a determination of whether the rule is a true "penalty" depends upon the substance of what it does and not how it may be described. *Commonwealth v. Musser Forrests, Inc.*, 394 Pa. 205, 146 A. (2d) 714 (1959); *Southern Ry. Co. v. Melton*, 133 Ga. 277, 65 S. E. 665 (1909). The correct test of whether an administrative rule is penal or remedial depends not upon its relative severity but rather whether the pecuniary amount to be paid is calculated to compensate injured parties for the wrongs done. 36 Am. Jur. (2d), Forfeitures &

Penalties, Section 8. It is of no significance in the first instance whether the rule is authorized by Section 38-37-950 so long as it may be independently justified as a function of the clearly expressed power to equitably apportion losses. If the Accounting Rule finds its basis in other sections of Act 1177 and is reasonably consistent with the Act's purposes, the Facility will not have acted in excess of its authority. *Beard-Laney, Inc. v. Darby,* 213 S. C. 380 49 S. E. (2d) 564 (1948); *Atlantic Coast L. R. Co. v. S. C. Public Service Commission,* 245 S. C. 229, 139 S. E. (2d) 911 (1965); *Terry v. Pratt,* 258 S. C. 177, 187 S. E. (2d) 884 (1972). Viewed in this light, the real issue becomes whether the authority to equitably apportion losses encompasses the authority to assess an overceding insurer a greater share of Facility losses than would have been assessed if no overutilization occurred.

The legislature intended to create a Facility empowered to apportion its losses among insurers according to the degree to which each member utilized the cession privilege:

> [T]he General Assembly declares that the purposes of [Act 1177] are:
>
> . . . . .
>
> (4) To provide a reinsurance facility for automobile insurance insurers to which all such insurers shall participate to the end that the operating expenses and net profit or loss of such Facility may be shared equitably by all such insurers transacting an automobile insurance business in this State giving *appropriate consideration to degrees of utilization of such Facility by the several insurers of automobile insurance* and to provide prohibitions or penalties in respect to excessive utilization of the Facility.

S. C. Code Section 38-37-110(4) (1976) [emphasis added]. Moreover, the Facility was expressly empowered to enact rules and regulations consistent with this purpose. See South Carolina Code Sections 38-37-710 and 38-37-720 (1976). Act 1177 also directed the adoption of a plan of operation to provide for "equitable apportionment" of Facility losses among its members and permitted the apportionment to be based upon any method that "relates insurers' shares to their respective uti-

lization of the Facility." South Carolina Code Section 38-37-730 (1976).

Clearly, Act 1177 expressly empowers the Facility to enact rules requiring an insurer who overutilizes the Facility to "participate to a greater degree in the distribution of Facility losses" as a function of its authority to equitably apportion losses. The delegation of authority to the Commission and Facility is sufficiently definite by the express terms of the Act which provide a clearly intelligible administrative guideline for the valid exercise of a rule-making authority. *Cole v. Manning*, 240 S. C. 260, 125 S. E. (2d) 621 (1962); *See also Secretary of Agriculture v. Central Roig Refining Co.*, 338 U. S. 604, 70 S. Ct. 403, 94 L. Ed. 381; *Bowles v. Willingham*, 321 U. S. 503, 64 S. Ct. 641, 88 L. Ed. 892; *Yakus v. U. S.*, 321 U. S. 414, 64 S. Ct. 660, 88 L. Ed. 834; *Metropolitan Life Ins. Co. v. N. Y. State Labor Rel. Bd.*, N. Y. 194, 20 N. E. (2d) 390. It makes no difference that a validly enacted rule serving an express purpose of the act also provides "double duty" as an arguable sanction which is not expressly provided for. *See* 5 Mezines, Stein & Gruff, Administrative Law Section 42.01 (1979). The challenged Accounting Rule authorizing an added loss assessment to overceded insurers obviously promotes the equitable apportionment of Facility losses based upon the overceded member's actual utilization of the cession privilege. The application of the assessment rests upon findings of unreasonable or excessive utilization of the Facility by the insurer and is germane to the problem of equitable loss distribution. The character of these findings negate the charge that the rule is designed exclusively to punish an insurer rather than to promote the integrity of the distribution system by returning losses statistically attributable to the overceded policies. As a result, I conclude that the rule is authorized by properly delegated authority to apportion losses equitably among Facility members, giving weight to each member's actual utilization and was properly applied within the facts of this appeal. *See L. P. Steuart & Bro., Inc. v. Bowles*, 322 U. S. 398, 64 S. Ct. 1097, 88 L. Ed. 1350; *Niagara Mohawk Power Corporation v. F. P. C.*, 379 F. (2d) 153, 159 (D. C. Cir. 1967); *Phelps Dodge Corporation v. N. L. R. B.*, 313 U. S. 177, 61 S. Ct. 845, 85 L. Ed. 1271; *Jacob Siegel Company v. F. T. C.*, 327 U. S. 608, 66 S. Ct. 758, 90 L. Ed. 888.

Moreover, I am persuaded that the challenged rule may also be authorized as a function of the power to "prohibit" over-utilization since the power to prohibit necessarily includes the power to sanction transgressions. *See, e.g., James v. State*, 124 Ga. 72, 52 S. E. 295 (1905). Sections 38-37-110(4) and (5) clearly evidence the legislature's intention to authorize "penalties in respect to excessive utilization of the Facility." When, as here, the "penalty" represents an attempt to administatively return losses on overceded policies, the rationale has even greater force. The primary objective of the rule is remedial, not penal, and should be subject to liberal interpretation and application rather than the narrow application suggested by Grain Dealers. If not explicitly authorized by Section 38-37-950, it is clear that authority for the rule arises by implication from the statutory authority to prohibit excessive or unreasonable utilization for unfairly competitive purposes.

Accordingly, judgment for the respondent is affirmed.