500 S.E.2d 176

**SOUTH CAROLINA DEPARTMENT OF REVENUE AND TAXATION, Appellant,**

v.

**ROSEMARY COIN MACHINES, INC., Respondent.**

**No. 2840.**

Court of Appeals of South Carolina.

Submitted April 7, 1998.

Decided May 4, 1998.

Rehearing Denied June 19, 1998.

Harry T. Cooper, Jr., Malane S. Pike, and Nicholas P. Sipe, all of South Carolina Department of Revenue and Taxation, Columbia, for appellant.

Dwight F. Drake and Zoe Sanders Nettles, both of Nelson, Mullins, Riley & Scarborough, Columbia, for respondent.

HOWARD, Judge:

Rosemary Coin Machines, Inc. (Rosemary Coin) brought this action to appeal the assessment of license fees it claims were retroactively charged by the South Carolina Department of Revenue and Taxation (Revenue) for a multi-player video poker machine. Revenue cited Rosemary for having only a single license for a multi-player machine after the video poker licensing statute was amended during the period of the machine's original license to require a separate license for each station. The Administrative Law Judge (ALJ) decided Revenue's application of an amendment to the licensing statute constituted an improper retroactive application and ordered a refund to Rosemary Coin. The circuit court agreed. We reverse.

## FACTS

In 1995 the South Carolina General Assembly passed Act No. 145, which amended S.C.Code Ann. § 12–21–2720 (Supp. 1997). This amendment became effective July 1, 1995. Section 12–21–2720(A) requires that "[e]very person who maintains for use" certain gaming machines, to include the one at issue here, obtain from Revenue a license effective for two years. Such licenses expire "May thirty-first the second year of which the license is valid following the date of issue." S.C.Code Ann. § 12–21–2734(A) (Supp.1997). The Act amended Section 12–21–2720(C) to read in pertinent part:

> (C) The owner or operator of any coin-operated device which is ... subject to licensing under Section 12–21–2720(A)(3) and which has multi-player stations, shall purchase a separate license for each such station and any such multi-player station counts as a machine when determining the number of machines authorized for licensure under Section 12–21–2804(A).[1]

Prior to this amendment, machine owners were allowed to purchase a single license for a multi-player machine.

Rosemary Coin owned a multi-player, five-station blackjack machine located at a convenience store in Conway, South Carolina. Rosemary Coin had purchased one license for this machine which, under the then current licensing framework, would lawfully license the machine from June 1, 1995 until May 31, 1997. On June 30, 1995, the day before the amendment became effective, Revenue called Rosemary Coin to inform it of the need to obtain additional licenses. On July 5, 1995, a Revenue officer entered the store and observed three stations of the machine in use by players. The machine was subject to licensing under Section 12–21–2720(A)(3) (Supp. 1997), but had only one license posted. The Revenue officer cited Rosemary Coin for having four unlicensed machines and assessed a licensing fee for each. Rosemary Coin purchased four additional licenses for the machine and then appealed the citation to the ALJ Division.

---

1. South Carolina Code Ann. § 12–21–2804(A) (Supp.1997) prescribes the number of machines allowed in an establishment. Currently the South Carolina Tax Commission may authorize only five machines in any place or premises.

The ALJ ruled for Rosemary Coin. After Revenue's motion for reconsideration was denied, Revenue petitioned the circuit court for review. The circuit court also held in favor of Rosemary Coin.

## LOWER COURTS' ANALYSIS

The ALJ concluded Revenue had retroactively applied the amendment to Rosemary Coin's machine in contravention of South Carolina law. *See Hercules, Inc. v. South Carolina Tax Comm'n,* 274 S.C. 137, 262 S.E.2d 45 (1980); *Neel v. Shealy,* 261 S.C. 266, 199 S.E.2d 542 (1973). The ALJ held such application to be error, as "[n]o statute will be applied retroactively unless that result is so clearly compelled as to leave no room for reasonable doubt." *Hyder v. Jones,* 271 S.C. 85, 88, 245 S.E.2d 123, 125 (1978).

The ALJ determined Section 12–21–2720(C) must be construed, and thus, the ALJ needed to ascertain the legislative intent. *First South Sav. Bank v. Gold Coast Assocs.,* 301 S.C. 158, 390 S.E.2d 486 (Ct.App.1990). The ALJ found Section 12–21–2720(C) to be a penal statute and, as such, to be strictly construed in favor of the taxpayer. *State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991); *South Carolina Nat'l Bank v. South Carolina Tax Comm'n,* 297 S.C. 279, 376 S.E.2d 512 (1989).

In "considering the plain and ordinary meaning of the statutory language," the ALJ was "*not* satisfied that the legislature intended this section to apply to machines licensed prior to June 1, 1995 for the current biennial period." *See Adkins v. Varn,* 312 S.C. 188, 439 S.E.2d 822 (1993). The ALJ found under the "well-defined licensing framework," the machine would be validly licensed through May 31, 1997, concluding:

> had the legislature intended the amendment to section 12–21–2720(C) to apply to this machine which was licensed prior to June 1, 1995 under the current biennial period, it would have changed the existing licensing period, or specifically indicated its intent to have the amendment apply to the prior licensing periods. The legislature did not do so.

Accordingly, the ALJ concluded the amendment "was intended to be applied prospectively to machines licensed on or after June 1, 1995."

On review, the circuit court found the amendment to be penal, determining "[t]he correct test ... depends ... upon ... whether the pecuniary amount to be paid is calculated to compensate injured parties for the wrongs done." *Grain Dealers Mut. Ins. Co. v. Lindsay*, 279 S.C. 355, 359, 306 S.E.2d 860, 863 (1983). After following the ALJ's opinion in all particulars, the circuit court affirmed.

## LAW/ANALYSIS

■ This court takes a different view of the contested amendment. We believe the legislature, in a valid exercise of its police power, intended this enactment to be effective immediately.

### I. *The Police Power*

■ The government is imbued with the power to legislate for the protection of the public health, welfare and morals. *State v. Langley*, 236 S.C. 583, 115 S.E.2d 308 (1960); *Midwest Beverage Co. v. Gates*, 61 F.Supp. 688 (N.D.Ind.1945) (citing *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); *Crane v. Campbell*, 245 U.S. 304, 38 S.Ct. 98, 62 L.Ed. 304 (1917)). This power "has no well defined limits, but must be as extensive as the necessities which call for its exercise." *City Council of Charleston v. Werner*, 38 S.C. 488, 495, 17 S.E. 33, 35 (1893). An excellent discussion of this concept is set forth in the South Carolina case of *State ex rel. George v. City Council of Aiken*, 42 S.C. 222, 20 S.E. 221 (1894):

"... [T]he origins of this power must be sought in the very purpose and framework of organized society. It is fundamental and essential to government. It is a necessary and inherent attribute of sovereignty. It antedates all laws, and may be described as the assumption on which constitutions rest; for the state, whether we regard it as an association of individuals, or as a moral organism, must have the right of self-protection, and the power to preserve its own existence in safety and prosperity, else it could neither fulfill the law

of its being nor discharge its duties to the individual. And to this end it is necessarily invested with power to enact such measures as are adapted to secure its own authority and peace, and preserve its constituent members in safety, health, and morality. Theories of the state, according as they tend to enlarge or restrict the legitimate sphere of its functions and activities, will create theories as to the proper limitations of the police power. But its existence in a measure proportioned to the rights and duties it is to guard is implied in the recognition of the state as a factor in law and civilization."

*Id.* at 234, 20 S.E. at 225–26 (quoting Black Intox. Liq., § 24).

■ No payment of money can stay the power of the government to legislate on behalf of its people:

No legislature can bargain away the public health or the public morals. The people themselves cannot do it, much less their servants. The supervision of both these subjects of governmental powers is continuing in its nature, and they are to be dealt with as the special exigencies of the government may require. Government is organized with a view to their preservation, and cannot divest itself of the power to provide for them. For this purpose the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself.

*Stone v. Mississippi,* 101 U.S. 814, 819, 25 L.Ed. 1079 (1879). *See Sammons v. City of Beaufort,* 225 S.C. 490, 499, 83 S.E.2d 153, 157 (1954) (the police power "must always remain fluid"); *State ex rel. George v. City Council of Aiken,* 42 S.C. 222, 20 S.E. 221 (1894) (quoting *Stone, supra* ); *State ex rel. Pollard v. Superior Court of Marion County,* 233 Ind. 667, 122 N.E.2d 612 (1954) (the right to legislate under the police power can not be surrendered or bartered away by the legislature); *Midwest Beverage Co. v. Gates,* 61 F.Supp. 688 (N.D.Ind.1945) (no binding limitation can be placed on the exercise of the police power through legislative action).

### A. Regulation under the police power

■ It is well within this broad power for the legislature to regulate the ownership and operation of coin-operated devices such as the subject blackjack machine. *See State v. Langley,*

236 S.C. 583, 115 S.E.2d 308 (1960) (holding the legislature has a right to regulate the operation of pinball machines under its police power, especially when the machines had been declared gambling devices). "In fact, the State's power to suppress gambling is practically unrestrained." *Army Navy Bingo, Garrison No. 2196 v. Plowden,* 281 S.C. 226, 314 S.E.2d 339 (1984) (addressing the regulation of bingo).

The General Assembly has previously adopted a policy which protects a gambler and his family from the gambler's uncontrollable impulses. *See Berkebile v. Outen,* 311 S.C. 50, 426 S.E.2d 760 (1993) (discussing evolution of S.C.Code Ann. § 32-1-10 (1991) allowing recovery of a gambler's loss). Such legislation has been likened to limiting the amount of alcohol one may drink in public and the highway speeding limits. *Id.* (citing S.C.Code Ann. §§ 16-17-530 (1985) and 56-5-1510 (1991)). We conclude that the State's regulation of coin-operated machines as listed in Section 12-21-2720(A)(3),[2] to include the subject blackjack machine, is pursuant to its police power.

## II. *The Nature of Licenses*

### A. A license is not a tax

■ Section 12-21-2720(A) is administered by the Department of Revenue. Although sometimes referred to as a "tax,"[3] it is in actuality a license fee, and a license is not a tax. *See Heslep v. State Hwy., Dep't,* 171 S.C. 186, 171 S.E. 913 (1933). As stated in *City Council of Charleston v. Werner,* 38 S.C. 488, 17 S.E. 33 (1893):

"A law which might be invalid as an exercise of the right to tax for revenue, might be sustainable where its purpose was the promotion of the general public health or morals.... [I]n the exercise of police power, the State is ordinarily to

---

**2.** (3) a machine of the nonpayout type, in-line pin game, or video game with free play feature operated by a slot in which is deposited a coin or thing of value except machines of the nonpayout pin table type with levers or "flippers" operated by the player by which the course of the balls may be altered or changed.
S.C.Code Ann. § 12-21-2720(A)(3) (Supp.1997)

**3.** *See* S.C.Code Ann. §§ 12-21-2720, -2730, -2734, -2740, -2744, and -2746.

be governed only by considerations of what is for the public welfare."

*Id.* at 493, 17 S.E. at 38 (quoting 18 Am. & Eng. Enc. Law, 544). *See also Midwest Beverage Co. v. Gates,* 61 F.Supp. 688, 691 (N.D.Ind.1945) ("The source of the permit [to sell beer] is the police power."). As a result, the analyses by the ALJ and circuit court do not apply to the amendment.

### B. A license is a permit, not a contract

There is no fundamental right to gamble. *Army Navy Bingo, Garrison No. 2196 v. Plowden,* 281 S.C. 226, 314 S.E.2d 339 (1984). In this State, the operation of devices such as the blackjack machine is allowed only pursuant to license. *See id.* (bingo). The "license is merely a permit or privilege to do what otherwise would be unlawful, and is not a contract between the authority, federal, state, or municipal, granting it and the person to whom it is granted...." *Heslep v. State Hwy. Dep't,* 171 S.C. 186, 189, 171 S.E. 913, 916 (1933). The machine's ownership and operation are subject to such restrictions as may be imposed by the legislature. *Army Navy Bingo, Garrison No. 2196 v. Plowden,* 281 S.C. 226, 314 S.E.2d 339 (1984).

Licenses confer no property right, but are permits issued pursuant to the State's police power. *Id.; Feldman v. South Carolina Tax Comm'n,* 203 S.C. 49, 26 S.E.2d 22 (1943)(liquor licenses). A license is a special privilege and not a contract. *Heslep v. State Hwy. Dep't,* 171 S.C. 186, 171 S.E. 913 (1933). As such, it creates neither a vested nor a permanent right. *Id.* It is a creature of statute, and the rights of the licensee are only as the statute confers. *See State ex rel. Pollard v. Superior Court of Marion County,* 233 Ind. 667, 122 N.E.2d 612 (1954) (liquor licenses). The license is to be enjoyed only so long as the licensee complies with the restrictions and conditions governing its continuance. *Feldman v. South Carolina Tax Comm'n,* 203 S.C. 49, 26 S.E.2d 22 (1943).

### C. A license is always subject to modification

Because the license is issued pursuant to the police power, the licensee takes it subject to the right of the State, at any time, for the public good, to make further restrictions and

regulations. *Dantzler v. Callison*, 230 S.C. 75, 94 S.E.2d 177 (1956).

> [T]he power of governing is a trust committed by the people to the government, no part of which can be granted away. The people, in their sovereign capacity, have established their agencies for the preservation of the public health and the public morals, and the protection of public and private rights. These [State] agencies can govern according to their discretion, if within the scope of their general authority, while in power; but they cannot give away nor sell the discretion of those that are to come after them, in respect to matters the government of which, from the very nature of things, must "vary with varying circumstances."

*Stone v. Mississippi*, 101 U.S. 814, 820, 25 L.Ed. 1079 (1879) (lotteries).

 The right to suppress coin-operated machines is governmental, to be exercised by the State at all times at its discretion. *See id.* A licensee, therefore, accepts the license with the implied understanding that the government, in its sovereign capacity, may resume such suppression at any time the public good shall require, whether it is paid for or not. *Id.; Heslep v. State Hwy., Dep't*, 171 S.C. 186, 171 S.E. 913 (1933) (the legislature is free to impose new or additional burdens thereon, or to alter, revoke or annul the license). A license only grants a suspension of governmental rights in the licensee's favor, subject to withdrawal at will. *Stone v. Mississippi*, 101 U.S. 814, 820, 25 L.Ed. 1079 (1879).

> [The licensee] has in legal effect nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the State. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal.

*Id.* at 821. *See Dantzler v. Callison*, 230 S.C. 75, 94 S.E.2d 177 (1956)(no person can acquire a vested right to continue, when once licensed, in a business which is subject to legislative control under the police power, as regulations prescribed for such may be changed or modified by the legislature, in the public interest). *See also Heslep v. State Hwy. Dep't*, 171 S.C.

186, 189, 171 S.E. 913, 916 (1933) ("this is the general rule notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired"); *Farris v. McNew,* 195 Tenn. 653, 263 S.W.2d 506 (1953) (real estate brokers forced to comply with additional requirements imposed by new law even though they were lawfully licensed under current statute); *Midwest Beverage Co. v. Gates,* 61 F.Supp. 688, 691 (N.D.Ind.1945) (the state has "omnipresent and unlimited power" to revoke or modify the terms of a permit in the interest of the public welfare).

### III. *Section 12–21–2720*

#### A. Legislative history

Section 12–21–2720 was added to the South Carolina Code by Act of 1986, effective February 4, 1986. It was quickly amended in 1986, effective June 18, 1986. It was amended again in 1987, to be effective July 1, 1987; in 1990 to be effective July 1, 1990; in 1991, effective for licenses issued after August 31, 1991; in 1992, effective May 4, 1992; again in 1992 to be effective July 1, 1992; in 1993 to be effective July 1, 1993; again in 1993 to take effect July 1, 1993; in 1994 effective June 29, 1994; and then by the subject amendment in 1995. The legislature amended this statute yet again in 1997, to take effect July 1, 1997.

▬▬▬ If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no need to employ rules of statutory interpretation, and the court has no right to look for or impose another meaning. *Paschal v. State Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995). We believe the language of the amendment is clear and without need for construction. We also conclude this legislative history shows an intent by the legislature to exercise its powers to closely and continuously regulate this industry.

As of the date it became effective, the amendment required that a multi-player machine must have licenses for each of its stations. The license purchased by Rosemary Coin prior to May 31, 1995, was still in effect on July 1, 1995, and acted to validly license one of the five stations on the blackjack machine.

## B. Not a penal statute

Lastly, the ALJ and the circuit court found Section 12–21–2720 to be a penal statute which should be construed strictly against the State. *See State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995) (a penal statute must be strictly construed against the State). First, we have decided no construction of the statute is needed. Second, Section 12–21–2720 is not a penal statute. There is no provision for penalty or forfeiture.

Rosemary Coin was not fined under Section 12–21–2720, but under Section 12–21–2738.[4] However, even if Section 12–21–2720 provided for punishment and needed to be interpreted, we would not employ this rule of construction.

> In one sense, every law imposing a penalty or forfeiture may be deemed a penal law; in another sense, such laws are often deemed, and truly deserve to be called, remedial. . . . It must not be understood that every law which imposes a penalty is, therefore, legally speaking, a penal law, that is, a law which is to be construed with great strictness in favor of the defendant. Laws enacted for the prevention of fraud, for the suppression of a public wrong, or to effect a public good, are not, in the strict sense, penal acts, although they may inflict a penalty for violating them.

*Taylor v. United States,* 44 U.S. (3 How.) 197, 210, 11 L.Ed. 559 (1845). *See United States v. Stowell,* 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890) (violation of revenue laws, citing *Taylor*).

Because Section 12–21–2720 contains no penalty and was enacted to "suppress a public wrong," we refuse to label it a penal statute.

---

4. A person who fails, neglects, or refuses to comply with the terms and provisions of this article or who fails to attach the required license to any machine, apparatus, billiard, or pocket billiard table, as herein required, is subject to a penalty of fifty dollars for each failure, and the penalty must be assessed and collected by the department.
 If the violation under this section relates to a machine licensed pursuant to Section 12–21–2720(A)(3), the applicable penalty amount is two thousand five hundred dollars. This penalty must be deposited to the credit of the general fund of the State.
 S.C.Code Ann. § 12–21–2738 (Supp.1997).

## CONCLUSION

The legislature amended Section 12–21–2720 in the exercise of its police power. Revenue was correct in interpreting the amendment, effective as of July 1, 1995, to require each station of a multi-player machine to be licensed. The amendment is straightforward and requires no construction. The orders of the ALJ and circuit court are therefore

**REVERSED.**

ANDERSON and HUFF, JJ., concur.