**FLAV–O–RICH, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1032.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1975.

Decided March 1, 1976.

John S. Greenebaum, Barnett, Alagia, Greenebaum, Miller & Senn, D. Paul Alagia, John S. Keck, Louisville, Ky., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Robert G. Sewell, Charles A. Shaw, N. L. R. B., Washington, D. C., for respondent.

Before PHILLIPS, Chief Circuit Judge, and CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This case is before the Court on the petition of Flav-O-Rich, Inc., to review two related orders of the National Labor Relations Board. The first challenged order was issued on August 19, 1974 following the Board's decision that Petitioner had violated section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1) (1970), by refusing to bargain with a union certified as collective bargaining representative for a number of its employees.[1] The second order for which review is sought was issued on October 31, 1974 wherein the Board denied Petitioner's Motion to Abate Proceedings and Reopen the Record to receive the results of an employee poll which indicated that the Union had lost its majority. The Board has filed a cross-application seeking enforcement of its bargaining order. This Court has jurisdiction of the proceedings under section 10(e) and (f) of the Act, 29 U.S.C. § 160(e), (f) (1970), because Flav-O-Rich is a Kentucky corporation with its principal place of business in Louisville, Kentucky and because the alleged unfair

labor practices occurred in part at the Company's facilities in Bristol, Tennessee.

The controversy arose when Flav-O-Rich, a company engaged in processing and distributing milk in Kentucky, agreed to purchase the milk processing and distribution assets of the Leatherwood Company, a smaller enterprise which provided a similar service to communities in West Virginia, Virginia and Tennessee. After the purchase agreement had been finalized, Teamsters Local 175,[2] the certified bargaining representative for most of Leatherwood's employees since May 28, 1971, contacted Flav-O-Rich and requested it to bargain over the collective bargaining agreement which was due to expire on November 30, 1973. Flav-O-Rich declined to bargain with the Union indicating that it had no duty to bargain because it was not a "successor employer" to Leatherwood and because it had a "good faith doubt" that the Union continued to enjoy majority status among the employees. On November 1, 1973, Flav-O-Rich acquired the distribution and processing assets of Leatherwood. The Company persisted in its refusal to bargain with the Union over renewal of the contract. It also rejected a Union request to bargain over the effects of its decision to close its distribution depot at Bluefield, West Virginia.

After unfair labor practice charges were filed and a hearing was held, an Administrative Law Judge concluded that Flav-O-Rich was a successor employer to Leatherwood with a duty to bargain. On August 19, 1974, the Board agreed that Flav-O-Rich was successor to Leatherwood and we affirm this finding. The Board also affirmed the Judge's conclusion that Flav-O-Rich had violated Sections 8(a)(5) and (1) of the Act and ordered the Company to bargain with the Union. Sometime after the Board's decision and the posting of appropriate notices, the Company claims that it received new evidence that the Union no

1. Flav-O-Rich, Inc., 212 NLRB No. 144 (1974).

2. Chauffeurs, Teamsters and Helpers Local Union No. 175, affiliated with the International

Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

longer enjoyed majority support. In order to test the Union's majority status, the Company conducted a poll of the employees in the bargaining unit which it asserts conformed to the requirements set forth in the Board's decision in *Struksnes Construction Co., Inc.,* 165 NLRB 1062 (1967). The poll indicated that an overwhelming number of employees did not support the Union. Armed with the results of the poll, the Company filed with the Board a Motion to Abate Proceedings and Reopen the Record to receive evidence of the Union's lack of support. The Company also petitioned for an election to test the Union's support.

■ On October 31, 1974, the Board summarily denied the Company's Motion to Abate Proceedings and Reopen the Record without providing a statement of reasons for the denial. Simultaneously, the Regional Director dismissed the Company's election petition. The Company thereupon petitioned this Court to review the orders of the Board. After filing of the record in these proceedings, the Board requested that it be allowed to withdraw the record in order to reconsider the Company's Motion to Abate Proceedings and Reopen the Record. The stated reason for the Board's request was that its records did not disclose whether the members of the Board who had originally decided this case had personally considered the Company's Motion to Abate and Reopen.[3] This Court denied the request to withdraw the record. Notwithstanding our denial of the request, the Board has apparently drafted an order reconsidering and denying the Company's mo-

tion signed by three members of the Board and purporting to explain the basis for the dismissal of the original motion.[4] This order is patently defective since it was entered at a time when the Board was without jurisdiction to modify its earlier decree. *See* 29 U.S.C. section 160(d) (1970); 29 C.F.R. 102.49 (1974). Its only relevance to this inquiry is to convincingly demonstrate that the Board has failed to recognize the seriousness of the procedural irregularities which have occurred in this case.

Petitioner cites two procedural errors as bases for denying the Board's request for enforcement of its orders: 1) the order denying the Motion to Abate Proceedings and Reopen the Record completely lacked a statement of reasons for the denial, and 2) there is no evidence that the Board members charged with the responsibility of ruling on the motion ever personally considered the motion and decided that it should be denied. We agree with Petitioner that the present procedural posture of the case renders the Board's orders inappropriate for enforcement.

■ The Administrative Procedure Act, 5 U.S.C. section 557(c) (1970),[5] requires that the NLRB state reasons for denying a party's motion to reopen. *Weltronic Co. v. NLRB,* 419 F.2d 1120, 1124 (6th Cir. 1969). Even before enactment of the Administrative Procedure Act, the Supreme Court had held that the Board must disclose a reasoned basis for its decision before a court will effectuate its orders. *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 196–97, 61

---

3. The Board's review of its records was apparently occasioned by a lawsuit brought by Flav-O-Rich in the Western District of Kentucky under the Freedom of Information Act, 5 U.S.C. § 552 (1970), seeking disclosure of any information and reasoning underlying the Board's order denying the Motion to Abate Proceedings and Reopen the Record. The District Court has ordered full disclosure and the matter is pending.

4. The proposed order signed by Members Fanning, Jenkins and Penello was dated March 26, 1975, two days prior to the Board's initial motion to withdraw the record.

5. The record shall show the ruling on each finding, conclusion, or exception presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—

(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.

5 U.S.C. § 557(c) (1970).

S.Ct. 845, 85 L.Ed. 1271 (1941). The requirement that an agency state a reasoned basis for decision is an important element in the process of administrative adjudication and judicial review. *See Baltimore & O. R. Co. v. Aberdeen & Rockfish R. Co.*, 393 U.S. 87, 92, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968). *See generally* 2 K. Davis, Administrative Law Treatise § 16.12 (1958) (hereinafter Davis).[6] Disclosure of the reasoning underlying administrative decision-making facilitates judicial review in numerous ways: it informs the parties and the reviewing court of the grounds for disposition of the case below, *see e. g., Borek Motor Sales, Inc. v. NLRB*, 425 F.2d 677, 681 (7th Cir. 1970); it exposes and deters arbitrary administrative actions, *see e. g., Morton v. Delta Mining, Inc.*, 495 F.2d 38, 42 (3d Cir. 1974), *cert. granted*, 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975); and it prevents both the agency and the court from exceeding their respective jurisdictions. *See e. g., Phelps Dodge Corp. v. NLRB, supra* at 197, 61 S.Ct. 845; *American Federation of State, County and Municipal Emp., AFL–CIO v. City of Cleveland*, 484 F.2d 339, 346 (6th Cir. 1973). *Cf.* 2 Davis § 16.05.

The most important function to be served by a statement of the Board's reasons for denying Petitioner's motion to reopen would be to provide a basis for review. *Cf. In re Boston & P. R. Corp.*, 428 F.2d 159 (1st Cir. 1970). Our scope of review over administrative determinations is limited and we are entitled to have the benefit of the Board's expertise in this area before we are called upon to rule on important questions of law and policy. As Mr. Justice Cardozo aptly expressed it in *United States v. Chicago, M., P. & R. R. Co.*, 294 U.S. 499, 511, 55 S.Ct. 462, 467, 79 L.Ed. 1023, 1032 (1935): "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." *See also Sec'y of*

*Agriculture v. United States*, 347 U.S. 645, 654, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); *NLRB v. Madison Courier, Inc.*, 153 U.S. App.D.C. 232, 472 F.2d 1307, 1326 (1972). We are not free to speculate on the basis of an order, *see Great Lakes Screw Corp. v. NLRB*, 409 F.2d 375, 379 (7th Cir. 1969), nor may we substitute our judgment for that of the Board. *See American Federation of State, County and Municipal Emp., AFL–CIO v. City of Cleveland, supra* at 346.

Counsel for the Board has suggested that the Court has the power to enforce an order of the Board even though it lacks a stated basis for decision if the reason for the Board's action is self-evident. Our decision in *Weltronic Co. v. NLRB, supra*, was cited to support that proposition. We do not believe that *Weltronic* is controlling in this instance. In *Weltronic* we indulged the presumption that the Board's unstated reason for denying the union's motion to reopen was because the company had already filed in this Court its petition for review of the Board's order. We regarded this as a valid reason for denying the motion which was firmly grounded in the Act and Board regulations.[7] Here, by contrast, Counsel asks us to hold, on the basis of an incomplete record, that the legal arguments advanced by Petitioner are so obviously without merit that they were not worthy of discussion by the Board. This we decline to do. Although we do not, at this time, express any opinion on the validity of Petitioner's arguments, we are not free to accept "appellate counsel's *post hoc* rationalization for agency action" in lieu of reasons and findings enunciated by the Board. *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). As the Supreme Court stated in the historic case of *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95, 63 S.Ct. 454, 462, 87

---

6. "Reasons differ from findings in that reasons relate to law, policy, and discretion rather than to facts." 2 Davis § 16.12 Professor Davis' distinction between reasons and findings and the requirement of both in administrative adjudication has been accepted by a number of courts. *See e. g., Citizens Ass'n of George-* *town, Inc. v. Zoning Commission*, 155 U.S.App. D.C. 233, 477 F.2d 402, 408 (1973); *Local 467, Upholsterer's Int. Union, AFL–CIO v. NLRB*, 419 F.2d 179, 182 (3d Cir. 1969).

7. *See* discussion in text accompanying footnote four.

L.Ed. 626, 636 (1943), an agency's "action cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order. . . . There must be a responsible finding." Since the Board has not disclosed the reasoning behind denial of Petitioner's motion to reopen we cannot enforce the closely related bargaining order.

The absence of a stated basis for decision may perhaps be explained by the Board's delegation of authority to its staff to review motions to reopen. In its brief, the Board concedes that its records do not affirmatively disclose whether the three Board members who had originally decided the case had themselves considered the Company's motion. In an affidavit, the members of the panel admitted that, at the time, it was a standing practice for the respective chief counsels to concur on their behalf in denial of reopening in any case where the staff felt that the grounds urged for reopening were wholly without merit.[8] Apparently this practice has since been abandoned.

█ It is a fundamental rule of administrative law that "[t]he one who decides [a case] must hear [it]." *United States v. Morgan*, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed.2d 1288 (1936). A necessary corollary of this principle is that he who decides the case must have authority to do so. Here the actual decision to deny Petitioner's motion was ostensibly made by the chief counsel and not by the Board members themselves. In our view this was an impermissible delegation of authority. A similar delegation theory was rejected by the Second Circuit in *KFC National Management Corp. v. NLRB*, 497 F.2d 298 (2d Cir. 1974). In that case an employer sought Board review of the decision of a Regional Director that the employer's charge of union impropriety in connection with a representational elec-

tion was without merit. The Board summarily rejected the employer's petition and later rejected a petition for reconsideration. Both petitions were reviewed by a panel consisting of one Board member and two staff attorneys authorized to vote on behalf of the two absent Board members. In disallowing the Board's delegation of decisional authority, Judge Smith, writing for a unanimous court, stated that:

> We hold no more than that the general proxies issued by the Board members to those not legally responsible for the review of representation decisions were invalid under both the statutory requirements of the National Labor Relations Act and the fundamental concepts of administrative due process. The members may, of course, continue to rely on their assistants for case summaries, legal memoranda, and draft opinions. And it may be that the Board as a whole may utilize its rule-making authority to restrict further—in a general, principled manner—its review of representation cases. If the members find the individual consideration of review petitions too burdensome, they may of course, petition Congress for further relief. So long as the Board's statutory basis and its own regulations provide for Board review of the Regional Director's decisions, however, it is the legally appointed and approved Board members, and not their staff assistants, who must make the final decisions on whether or not to grant review.

497 F.2d at 306 (footnotes omitted).

The delegation of authority in this case was even broader than that in *KFC National Management Corp.* because here there is no indication that anyone with actual authority to decide the case personally considered and decided the issues raised in Petitioner's motion. Nor may the claimed insubstan-

---

**8.** In an affidavit submitted to the District Court in the related Freedom of Information Act case, the three members of the panel admitted,

> That at the time that the Board's Order issued denying Respondent's Motion to Abate Proceedings and Reopen Record, our respective chief counsels were authorized to concur

on our behalf in the denial of the reopening of any record in a decided case where it was clear that the grounds asserted for reopening the record were wholly irrelevant to the disposition of the case as a matter of settled Board law. . . .

tiality of Petitioner's arguments excuse the invalidity of procedures adopted to rule on motions to reopen. If nothing else, Petitioner was entitled to have its motion considered by those with legal authority to pass upon it. Because Petitioner's motion to reopen has not been legitimately reviewed by members of the Board, the bargaining order may not be enforced.

In view of the procedural errors committed by the Board in connection with Petitioner's Motion to Abate Proceedings and Reopen the Record, the proper remedy is to remand the case to the Board for corrective action. *See generally* 2 Davis § 16.14. Petitioner's motion and the issues raised, notably the relevance of a *Struknes* poll to the question of a successor employer's "good faith doubt" concerning the continued majority status of the Union, should receive complete consideration by a duly constituted panel of the Board. Although we realize that there is a genuine possibility that this case may return to this Court, we do not consider remand to the Board a futile gesture. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 783, 89 S.Ct. 1426, 22 L.Ed.2d 109 (Harlan, J., dissenting). *See also* Davis § 15.12 (Supp.1970). There is no certainty that the result reached by the Board on remand will be the same as that of the staff attorneys in the initial review. Also, in the event Petitioner does not succeed before the Board on remand and petitions for review, at least this Court will have the benefit of a record which reflects the reasoned opinion of those individuals charged with the enforcement of the Act.[9]

We deny enforcement and remand to the National Labor Relations Board for reconsideration of Petitioner's Motion to Abate Proceedings and Reopen the Record.

9. The Petitioner fears that on remand the Board would merely reinstate the proposed order which it prepared while it was without jurisdiction to issue orders in this case. That order did not adequately state the basis for the decision but merely made a conclusory statement that,

> The Board, having duly reconsidered the Motion, concludes that, *inter alia,* a *Struknes* [sic] type poll conducted by the Employer on

September 16, 1974, to determine whether a majority of the employees desired the Union, does not warrant reversal of the Administrative Law Judge's decision which issued April 24, 1974 which the Board affirmed on August 19, 1974.

On remand we expect that the Board will provide a more detailed statement of reasons underlying its decision.