2331

The STATE, Respondent v. James Anthony BYRD, Appellant.

(456 S.E. (2d) 922)

Court of Appeals

*Olin L. Purvis, III, Thompson, Henry, Gangi, Brittain & Stevens, Myrtle Beach, for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Charles W. Gambrell, Jr., and Asst. Atty. Gen. Anne Hunter Young, Columbia, for respondent.*

Heard Feb. 7, 1995.

Decided Apr. 3, 1995.

HOWARD, Judge:

James Anthony Byrd appeals his conviction for three counts of trafficking in cocaine and one count of conspiring to traffick in cocaine, alleging the trial court erred in denying his motion for mistrial. During direct examination of the State's lead investigating agent, the witness opined an unsolicited characterization of Byrd as the "largest drug dealer cocaine-wise" in eastern South Carolina. Byrd claims this statement was an impermissible comment on the ultimate issue of guilt, and he argues that his conviction should be overturned. We affirm.

## *FACTS*

Byrd and thirty-two other defendants were indicted by the State Grand Jury for conspiracy to traffic in cocaine. Thirty-

one of the other defendants subsequently pled guilty or had their charges dismissed. Byrd and a codefendant were tried in Chesterfield County between March 20 and March 30, 1993, and the jury convicted Byrd on four of the charges in the indictment: conspiring to traffick in cocaine, two hundred grams or more; trafficking in cocaine, one hundred grams or more but less than two hundred grams; trafficking is cocaine, twenty-eight grams or more but less than one hundred grams; and trafficking in cocaine, ten grams or more.

During Byrd's trial, the State called State Law Enforcement Division (SLED) Special Agent Eddie Gordon, the "lead agent" in the investigation of Byrd. Gordon described the network in which Byrd received and distributed cocaine, and he identified Byrd as "without question, my opinion, [the] largest drug dealer cocaine-wise that I've investigated in this end of the state without question." Byrd immediately objected and moved for a mistrial, arguing that Agent Gordon had given an opinion as to the ultimate issues in this case, including the guilt or innocence of Byrd. The trial judge denied the motion, but offered to give, and subsequently gave, a curative instruction to the jury that "they alone are the finders of the facts." On appeal, the State concedes the testimony was improper, but asserts the error was harmless.

## LAW/ANALYSIS

The United States Supreme Court has identified two types of trial error: "trial errors" which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented," and "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards" and therefore require reversal. *Arizona v. Fulminante*, 499 U.S. 279, 307-09, 111 S.Ct. 1246, 1263-64, 113 L.Ed. (2d) 302 (1991), *cited in State v. Jefferies*, 316 S.C. 13, 446 S.E. (2d) 427 (1994), *cert. denied*, — U.S. —, 115 S.Ct. 911. 130 L.Ed. (2d) 793 (1995). In this case, we are first faced with the question of whether the admission of the contested testimony rises to the level of a "structural defect" such that we may not employ a harmless error analysis, or whether it is merely a "trial error" which would allow evaluation under the harmless error standard.

Initially, we note our Supreme Court has historically refused to set aside convictions for nonprejudicial errors in the admission of evidence. *State v. Knight*, 258 S.C. 452, 189 S.E. (2d) (1972). Thus, in *State v. Wingo*, 304 S.C. 173, 403 S.E. (2d) 322 (Ct. App. 1991), we refused to overturn convictions for first-degree criminal sexual conduct and contributing to the delinquency of a minor in spite of the admission of evidence of similar crimes, as well as the admission on cross-examination of testimony regarding nude photos of defendant's wife and testimony that defendant had sexual relations with his wife prior to their marriage. In *State v. Brown*, 286 S.C. 445, 334 S.E. (2d) 816 (1985), similarly, in light of cumulative evidence, the Supreme Court held harmless the erroneous admission of a doctor's testimony identifying the defendant as the perpetrator of an alleged sexual assault on a child by relating the child's statement. More recently, in *State v. Newell*, 303 S.C. 471, 401 S.E. (2d) 420 (Ct. App. 1991), we held harmless the admission of a breathalyzer checklist where the checklist was cumulative to the in-court testimony given by its author.

We conclude the admission of opinion testimony concerning a criminal defendant's guilt should also be subject to the harmless error analysis. In *Fulminante*, the Court described a "trial error" as an "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." 499 U.S. at 307-08, 111 S.Ct. at 1263-64. In other words, where the error may be weighed against the other evidence properly admitted during a trial, the Court must conduct such a weighing, rather than merely reversing the decision below wholesale. *See Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed. (2d) 284 (1988) (admission of evidence at the sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed. (2d) 424 (1977) (admission of identification evidence in violation of the Sixth Amendment Counsel Clause); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed. (2d) 208 (1973) (admission of the out-of-court statement of a nontestifying codefendant in violation of the Sixth Amendment Counsel Clause); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174,

33 L.Ed. (2d) 1 (1972) (confession obtained in violation of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. (2d) 246 (1964)); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. (2d) 419 (1970) (admission of evidence obtained in violation of the Fourth Amendment). A "structural defect," by contrast, affects the "entire conduct of the trial from beginning to end." *Fulminante*, 499 U.S. at 309, 111 S.Ct. at 1264. Logically, such a defect defies analysis by "harmless-error" standards because by infecting the entire trial, a structural error prevents any weighing of the inadmissible evidence against the admissible evidence because all evidence admitted is tainted by the structural defect. *Id.; see also Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. (2d) 799 (1963) (total deprivation of the right to counsel at trial); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. (2d) 749 (1927) (trial judge not impartial).

Thus, we now hold that where opinion testimony as to a criminal defendant's guilt is admitted into evidence, the effect of that evidence may be measured under the harmless error analysis. Having reached this conclusion, we must now determine whether " 'beyond a reasonable doubt the error complained of did not contribute to the verdict obtained.' " *Arnold v. State*, 309 S.C. 157, 165, 420 S.E. (2d) 834, 839 (1992) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed. (2d) 705 (1967)), *cert. denied*, — U.S. —, 113 S.Ct. 1302, 122 L.Ed. (2d) 691 (1993). " '[The] requirement that harmlessness of federal constitutional error be clear beyond a reasonable doubt embodies [a] standard requiring reversal if there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Arnold*, 309 S.C. at 165, 420 S.E. (2d) at 838 (quoting *Yates v. Evatt*, 500 U.S. 391, 402-03, 111 S.Ct. 1884, 1892, 114 L.Ed. (2d) 432 (1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed. (2d) 385 (1991)).

> To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. . . .
>
> Before reaching such a judgment, a court must take two quite distinct steps. First, it must ask what evidence the jury actually considered in reaching its verdict. . . .

[Second, the Court] must weigh the probative force of that evidence as against the probative force of the [improper testimony] standing alone.

*Yates v. Evatt*, 500 U.S. at 403-04, 111 S.Ct. at 1892-93.

In this case, seven witnesses in addition to Agent Gordon testified to Byrd's drug operations. Richard Porter testified he had purchased cocaine on a regular basis from Byrd since the fall of 1990. Porter stated he generally purchased one-half ounce to three ounces from Byrd weekly, and he split this amount into smaller amounts and sold them to individual users. Porter also testified he travelled with Byrd to purchase cocaine on at least two occasions, and on the first of these occasions, Byrd purchased thirteen ounces, while on the second occasion he secured nine ounces. He also testified that after he was arrested, he made three undercover purchases from Byrd, and he tape-recorded several conversations and phone calls with Byrd concerning drug-purchases.

David Ellerbe testified he sold cocaine to Byrd regularly from early 1990 to 1992. Ellerbe claimed he initially sold Byrd one ounce of cocaine per week, but by 1992, he was selling Byrd thirteen to fourteen ounces twice a week.

Michael Mumford testified he picked up, delivered, and "stashed" cocaine for Byrd. Mumford stated he regularly bought cocaine from Ellerbe on Byrd's behalf, and he also delivered cocaine to at least six people in the Cheraw area for Byrd. Mumford also testified he met with Byrd and Jose, Byrd's New York cocaine source, and claimed Jose regularly supplied Byrd with ten to twenty ounces of cocaine. Mumford stated he did not receive a "set salary" from Byrd, but instead, Byrd would provide him with "spending money" on a weekly basis, and loaned him one of several cars which he controlled.

Robert Johnson testified he took friends to Byrd to buy cocaine. He claimed he saw cocaine at Byrd's house often, and at one point he saw fifteen to twenty ounces at Byrd's home.

Russell Mungo testified he sold cocaine from 1989 to 1992. He claimed Byrd was a primary supplier.

Johnny Campbell testified he used Byrd as a source of cocaine. He claimed he typically bought one-half to two ounces of cocaine from Byrd every other week.

Finally, John McGee testified he made a controlled buy of half an ounce of cocaine from Byrd for Agent Gordon.

Clearly, the evidence supporting Byrd's conviction is overwhelming. It consumed several days of trial, and it consists of several hundred pages of transcript. The evidence included controlled purchases of cocaine from Byrd and detailed accounts of drug transactions involving large amounts of cocaine. By contrast, Agent Gordon's statement of opinion of Byrd was brief and isolated. Moreover, it was followed by a curative instruction that the jury alone was the finder of fact in the case. Thus, we find the opinion of Agent Gordon was inconsequential in relation to the other evidence the jury considered. Considering the probative force of all the evidence as against the probative force of the improper testimony alone, we conclude beyond a reasonable doubt that the opinion testimony did not contribute to the verdict, and as such, constituted harmless error.

Affirmed.

SHAW and GOOLSBY, JJ., concur.